# EXHIBIT
# A

FEDERAL EXPRESS CORPORATION
LONG·TERM DISABILITY PLAN

(As amended and restated effective May 31, 1999)

LTD.390096/ 4/17/01.     AR 00396

TABLE OF CONTENTS

Page

INTRODUCTORY STATEMENT ...............................i

ARTICLE 1      DEFINITIONS ...............................1
               Section 1.1.    Terms ......................1

ARTICLE 2      ELIGIBILITY AND COVERAGE ....................14
               Section 2.1.    Date Coverage Begins ......14
               Section 2.2.    Termination of
                               Coverage .................15
               Section 2.3.    Pilot and Crew Member
                               Supplementary Disability
                               Coverage ..................16
               Section 2.4.    Termination of Pilot and
                               Crew Member Supplementary
                               Disability Coverage .......16

ARTICLE 3      BENEFITS ...............................18
               Section 3.1.    Disability Benefit ........18
               Section 3.2.    Amount of Benefit .........18
               Section 3.3.    Duration of Benefit .......19
               Section 3.4.    Pilot and Crew Member
                               Supplementary Disability
                               Benefit ...................25
               Section 3.5.    Recurring Disabilities ....31
               Section 3.6.    Reduction of Disability
                               Benefit for Other Income ..32
               Section 3.7.    Payroll Deductions ........39
               Section 3.8.    Exclusions ................40
               Section 3.9.    General Limitation On
                               All Benefits ..............41

ARTICLE 4      CONTRIBUTIONS ...............................43
               Section 4.1.    Company Contributions .....43
               Section 4.2.    Contributions for Pilot
                               and Crew Member
                               Supplementary
                               Disability Benefits .......43
               Section 4.3.    Prohibition of Reversion
                               or Inurement to Employer,
                               Private Shareholders or
                               Individuals ...............44

ARTICLE 5      SUBSTANTIATION OF DISABILITY; CLAIMS ........45
               Section 5.1.    Proof of Disability .......45
               Section 5.2.    Notice of Claim ...........46
               Section 5.3.    Claims Procedure ..........48
               Section 5.4.    Overpayment of Claims .....51

Page

Section 5.5.          Subrogation or
                      Reimbursement ............52
Section 5.6.          Disability Benefits of a
                      Deceased Covered Employee .55

ARTICLE 6     ADMINISTRATION OF PLAN ......................56
              Section 6.1.     Administrator .............56
              Section 6.2.     Committee ................57
              Section 6.3.     Trustee ..................59
              Section 6.4.     Expenses of the Plan ......59
              Section 6.5.     Legal Incompetence ........59

ARTICLE 7     AMENDMENT AND TERMINATION ....................61
              Section 7.1.     Amendment of Plan .........61
              Section 7.2.     Termination of Plan .......61
              Section 7.3.     Distribution of Trust
                               Fund Upon Termination .....61
              Section 7.4.     Merger and Dissolution ....62

ARTICLE 8     MISCELLANEOUS
                               ......................63
              Section 8.1.     Benefits Not Assignable ...63
              Section 8.2.     Rights of Covered
                               Employees Narrowly
                               Construed ................63
              Section 8.3.     Number and Gender ........63
              Section 8.4.     Necessary Parties .........64
              Section 8.5.     Agent for Service of
                               Process ..................64
              Section 8.6.     Governing Law ............64
              Section 8.7.     Headings .................64
              Section 8.8.     Legal Effect .............65
              Section 8.9.     Execution ................65

AR 00398

LTD.390096/ 4/17/01

## INTRODUCTORY STATEMENT

Federal Express Corporation (the "Company") has heretofore maintained a Long Term Disability Plan (previously called the Wage Continuation Plan) since January 1, 1978 to provide for the funding and payment of long-term disability benefits for its employees pursuant to Section 501(c)(9) of the Internal Revenue Code respecting the establishment and tax-exempt status of voluntary employees' beneficiary associations. Such plan is hereby amended and restated in its entirety effective May 31, 1999, all as set forth herein, in order to conform the terms thereof to desired administrative practice.

AR 00399

## FEDERAL EXPRESS CORPORATION

## LONG TERM DISABILITY PLAN

### ARTICLE 1
### DEFINITIONS

Section 1.1.  Terms.  As used herein, the following terms
shall have the indicated meanings unless a different meaning
is clearly required by the context:

(a)     Administrator shall mean the Company, which is
charged with the administration of the Plan,
acting through its Employee Benefits Department.

(b)     Bargaining Unit shall mean a unit of Employees
covered by a collective bargaining agreement
between Employee representatives and the
Employer in connection with which long-term
disability benefits were the subject of good-
faith bargaining.

(c)     Basic Monthly Compensation shall mean the amount
of regular monthly compensation paid by the
Employer to a Covered Employee at the time of
his Disability, exclusive of any bonuses,
commissions, overtime and incentive pay,
expatriate premiums and bonuses or any other
type of non-recurring or discretionary
compensation, but including Crew Members'
overpay.  However, regular monthly compensation
(as described in the preceding sentence) for a
Crew Member shall be determined by calculating

1                    AR 00400

his average monthly compensation for the 12 highest, consecutive months of compensation during the 36 months immediately preceding his Disability Commencement Date.

In the case of a Crew Member who has undergone a Seat Change and subsequently is unable to perform his duties while in the Seat Change, his monthly rate of compensation shall be the greater of (i) the amount determined with respect to the above described period immediately preceding the date on which he experienced the Seat Change, or (ii) the amount determined with respect to such period immediately preceding the date of the current disability which has caused him to be unable to continue in the Seat Change position. In no event shall Basic Monthly Compensation exceed the limit imposed by Section 505(b)(7) of the Internal Revenue Code of 1986, as amended.

(d) Chemical Dependency shall mean the habitual or addictive use of alcohol or any controlled substance.

(e) Claims Paying Administrator shall mean Kemper National Services or any other entity or person designated as such by the Company.

(f)    <u>Committee</u> shall mean the committee described in Section 6.2.

(g)    <u>Company</u> shall mean Federal Express Corporation, a Delaware corporation.

(h)    <u>Controlled Group Member</u> shall mean FedEx Corporation, Federal Express Corporation, FedEx Corporate Services, Inc., FedEx Freight Corporation (formerly, FedEx Freight System, Inc.), Caliber System, Inc., Caliber Technology, Inc., FedEx Supply Chain Services, Inc. [formerly, Caliber Logistics, Inc.], FedEx Ground Package System, Inc. [formerly, RPS, Inc.], FedEx Custom Critical, Inc. [formerly, Roberts Express, Inc.], AutoQuik, Inc., Passport Transport, Inc., Urgent Freight, Inc., Viking Freight, Inc., FedEx Trade Networks, Inc., Tower Group International, Inc., World Tariff, Limited, Caribbean Transportation Services, Inc., and American Freightways, Inc., as of the dates such entities became subsidiaries of FedEx Corporation or one of its subsidiaries.

(i)    <u>Covered Employee</u> shall mean an Eligible Employee who becomes covered by the Plan as provided in Section 2.1.

(j)    <u>Crew Member</u> shall mean an employee whose right to participate in the Plan arises from the collective bargaining agreement between Federal

Express Corporation and the FedEx Pilots' Association dated December 16, 1998 and effective May 31, 1999 (the "Agreement"), or any such successor collective bargaining agreement between the Company and the Association under which Crew Members' participation in this Plan is contemplated. The term "Crew Member" shall specifically include, solely with respect to Disabilities which commence on or after May 31, 1999, an Employee who transfers to or occupies a management position within Air Operations or who assumes duties for Air Operations other than flying covered by the Agreement.

(k)    Disability or Disabled shall mean either an Occupational Disability or a Total Disability; provided, however, that a Covered Employee shall not be deemed to be Disabled or under a Disability unless he is, during the entire period of Disability, under the direct care and treatment of a Practitioner and such Disability is substantiated by significant objective findings which are defined as signs which are noted on a test or medical exam and which are considered significant anatomical, physiological or psychological abnormalities which can be observed apart from the individual's symptoms.

(1)    <u>Disability Benefit</u> shall mean the monthly benefit payable under this Plan to a Covered Employee who has incurred a Disability or a Seat Change.

(m)    <u>Disability Commencement Date</u> shall mean, solely with respect to a Crew Member, the first date on which such Crew Member begins drawing his sick bank account.

(n)    <u>Eligible Employee</u> shall mean a Pilot, Crew Member or an Employee who is engaged in Permanent Full-Time Employment with a Sponsoring Employer, other than: (1) an Employee domiciled in the U.S. Virgin Islands or Guam, or (2) a Pilot, Crew Member or other Employee who is included in a Bargaining Unit, unless the collective bargaining agreement to which such Pilot, Crew Member or Employee is subject specifically incorporates the Plan. A Pilot, Crew Member, or other Employee who is classified as casual, temporary, permanent part-time, work study or restricted schedule, who is on furlough, or who is on a personal, family (other than a family leave for his own illness or injury), unapproved disability or other leave of absence (each as defined in applicable personnel policies) shall not be an Eligible Employee.

(o)    Employee shall mean an individual employed by
the Employer but shall not include an individual
who is classified by a Sponsoring Employer as a
leased employee, an independent contractor or an
agent or employee of an independent contractor,
regardless of whether such individual is later
reclassified as a common-law employee by a court
or government agency having competent
jurisdiction.

(p)    Employer shall mean the Company, FedEx
Corporation, and all other Sponsoring
Employers, and each of them, which are
subsidiary to or affiliated with the Company,
which are designated by FedEx Corporation as an
employer whose employees are covered by the Plan
and which adopt the Plan for the benefit of
their employees.

(q)    Employment Status shall mean the various
designations given by the Employer to persons
with whom it has a current employment
relationship as provided in the Employer's
applicable personnel policies.

(r)    Lump Sum Present Value Payment shall mean the
settlement payment made to a Disabled Covered
Employee as provided in Section 3.3. The amount
of such payment shall be the present value of
the Disability Benefits remaining under the Plan

AR 00405

for an Occupational Disability, as defined herein. The present value shall be the actuarial equivalent of such periodic payments using interest equivalent to the rate then being used by the Federal Express Corporation Employees' Pension Plan for calculating lump sum payments.

(s) <u>Maximum Benefit Age</u> shall mean:

    (1) with respect to a Covered Employee who is receiving a Pilot and Crew Member Supplementary Disability Benefit, such Employee's 60th birthday; and

    (2) with respect to a Covered Employee who is receiving a Disability Benefit other than a Pilot and Crew Member Supplementary Disability Benefit,

        (i) such Employee's 65th birthday if the Disability Benefit commenced before his 60th birthday, or

        (ii) if the Disability Benefit commenced on or after his 60th birthday, the fifth anniversary of the date the Disability Benefit commenced.

AR 00406

(t)    Mental Impairment shall mean a psychiatric or psychological condition which is usually treated by a mental health Practitioner or other qualified Practitioner who uses psychotherapy, psychotropic drugs or other similar modalities. Such conditions include, but are not limited to, the following:

schizophrenia          depression

personality disorder   mental stress

adjustment disorder    anxiety

manic depression       bipolar disorder

Mental Impairment does not include conditions which usually are not treated in the above manner. Such conditions include, but are not limited to, dementia if caused by stroke, trauma, viral infection or Alzheimer's disease.

(u)    Occupational Disability shall mean the inability of a Covered Employee, because of a medically-determinable physical impairment or Mental Impairment (other than an impairment caused by a Chemical Dependency), to perform the duties of his regular occupation. With respect to a Crew Member whose Disability Commencement Date is on or after May 31, 1999, Occupational Disability shall include an impairment caused by a Chemical

LTD.390096/ 4/17/01

8

AR 00407

Dependency, but only to the extent provided under Section 3.3(b) herein.     Occupational Disability shall include a natural physical deterioration which impairs a Covered Employee's ability in connection with his duties in the operation or maintenance of an aircraft, vehicle or any other such equipment requiring licensing for its operation or maintenance and which results in the revocation of such license and denial of restoration thereof.

(v)     Other Income shall mean the aggregate of the amounts described in Section 3.6 expressed, where necessary, in equivalent monthly amounts.

(w)     Permanent Full-Time Employment shall mean (1) with respect to an Employee other than a Crew Member or Pilot, employment with the Employer of an Employee who customarily works a regularly-scheduled thirty-five hour minimum work week for the Employer and who is designated as a permanent full-time employee as evidenced by documentation of such designation in the Employee's personnel file; and (2) with respect to a Crew Member or Pilot, full-time employment with the Employer as evidenced by documentation in such individual's personnel file.     No Employee shall be considered to be engaged in Permanent Full-Time Employment until such

designation is documented in his personnel file. However, the designation of Permanent Full-Time Employment within this Plan is for the purpose of benefits eligibility only and does not confer any special status upon Employees that is not specifically stated herein. The term Permanent Full-Time Employment does not mean, nor should it be inferred to mean, lifetime employment; nor does it infer the promise of certain treatment not specifically provided herein.

(x)    Permanent    Occupational    Restrictions    and Limitations shall mean those medical conditions which will, within a reasonable degree of medical certainty, permanently prevent a Disabled Covered Employee from resuming his regular occupation.

(y)    Pilot shall mean an individual engaged in permanent, full-time employment with the Employer as a corporate pilot or co-pilot, as evidenced by documentation in such individual's personnel file, but shall not include a Crew Member.

(z)    Pilot and Crew Member Supplementary Disability Benefit shall mean the monthly benefit payable to a Crew Member or Pilot pursuant to Section 3.4.

AR 00409

(aa)   <u>Plan</u> shall mean the Federal Express Corporation Long Term Disability Plan, as contained herein and as amended from time to time.

(bb)   <u>Plan Year</u> shall mean the twelve-consecutive month period ending on May 31 of each year.

(cc)   <u>Practitioner</u> shall mean an individual (other than the spouse or a relative of the claimant under the Plan) who is properly licensed in the healing arts and recognized by the law of the state in which treatment is received as qualified to treat the sickness or injury for which a claim for benefits is made under the Plan and is performing within the scope of his license with respect to such treatment.

(dd)   <u>Seat Change</u> shall mean the demotion of a Crew Member from a higher paying position to a lower paying position, the job description of which is still that of Crew Member, by reason of any medically determined physical or Mental Impairment (other than an impairment caused by a Chemical Dependency) resulting in:

   (1)   the revocation of such Crew Member's medical rating and airman's certificate by the Federal Aviation Administration; and

   (2)   the re-issuance by the Federal Aviation Administration of a lower

AR 00410

LTD.390096/ 4/17/01

11

medical     rating     and     airman's certificate to such Crew Member.

(ee)    Sponsoring Employer shall mean: (i) the Company, (ii) effective February 1, 1998, FedEx Corporation,     (iii)     effective December 1, 1998, FedEx Global Logistics, Inc., (iv) effective March 1, 2000, FedEx Trade Networks, Inc., (v) effective March 1, 2000, Tower Group International, Inc., (vi) effective April 1, 2000, World Tariff, Limited, (vii) effective June 1, 2000, FedEx Corporate Services, Inc., (viii) effective March 1, 2001, FedEx Freight Corporation (formerly, FedEx Freight System, Inc.), which are designated by the Corporation as Sponsoring Employers whose Employees are covered by the Plan.

(ff)    Temporary Return to Work Position shall mean the temporary employment of a Disabled Covered Employee by an Employer in a temporary position established by the Employer on an ad hoc basis to permit the employment of such Employee who is unable to perform the full range of duties of his regular occupation, where such Employee has been released to return to work in a limited capacity.

(gg)    Total Disability shall mean the complete inability of a Covered Employee, because of a medically-determinable physical impairment (other than an impairment caused by a mental or nervous condition or a Chemical Dependency), to engage in any compensable employment for twenty-five hours per week for which he is reasonably qualified (or could reasonably become qualified) on the basis of his ability, education, training or experience.

(hh)    Trust Fund shall mean the aggregate assets of the trust established pursuant to the trust agreement which constitutes a part of this Plan.

(ii)    Trustee shall mean the bank or trust company acting as trustee under the trust agreement and any successor thereto.

AR 00412

ARTICLE 2
ELIGIBILITY AND COVERAGE

Section 2.1.    Date Coverage Begins.    Each Eligible
Employee other than a Pilot or Crew Member shall be
automatically covered by the Plan after completing one
hundred eighty (180) days of active Permanent Full-Time
Employment. Each Eligible Employee who is a Pilot or Crew
Member shall be automatically covered by the Plan after
completing one hundred eighty (180) days of active Permanent
Full-time Employment. For purposes of the waiting period
described in the preceding two sentences, days worked in a
Temporary Return to Work Position or days of work missed due
to furlough or leave of absence of any kind shall not be
included in determining when the 180-day period has been met
and the period shall be extended for each day in a Temporary
Return to Work Position and for each day of work missed due
to leave of absence except that days on leave of absence due
to jury duty or military leave shall be included in
determining when the 180-day period is met. This 180-day
waiting period shall apply each time an Eligible Employee
begins Permanent Full-Time Employment.

The foregoing to the contrary notwithstanding, an
Eligible Employee who becomes an Employee of a Sponsoring
Employer on or after the date on which such entity became a
Sponsoring Employer and who is a former employee of either of
the Controlled Group Members shall be covered by the Plan on
the later of (1) his date of employment with the Sponsoring

14

Employer, provided that such Eligible Employee had, immediately prior to the date of his employment with the Sponsoring Employer, completed one hundred eighty (180) days of active Permanent Full-Time Employment with the Controlled Group Member, or (2) the date on which such Eligible Employee completes one hundred eighty (180) days of active Permanent Full-Time Employment with the Sponsoring Employer and any other Controlled Group Member.

Once an Employee is covered by the Plan, such coverage shall continue until terminated as provided in Section 2.2.

Section 2.2.    Termination of Coverage.    Coverage under the Plan will automatically terminate as to any Covered Employee on the earliest of:

(a)  the date his Employer discontinues the Plan;

(b)  the date he ceases Permanent Full-Time Employment, including the date of his retirement or death;

(c)  the date he becomes a member of a Bargaining Unit unless such Bargaining Unit Covered Employee's collective bargaining agreement specifically incorporates the Plan;

(d)  the date he ceases to meet the definition of an Eligible Employee; or

(e)  the date he is suspended.

If, however, an Employee whose coverage was terminated pursuant to Subsection (e) of this Section 2.2 is subsequently reinstated as an Eligible Employee, his coverage

LTD.390096/ 4/17/0'

under the Plan shall be deemed never to have terminated and his absence from being actively at work shall be deemed to have been on account of his Disability, not his suspension.

Section 2.3. Pilot and Crew Member Supplementary Disability Coverage. A Crew Member hired after July 1, 1989 whose Disability Commencement Date is prior to May 31, 1999 shall not be eligible for a Pilot and Crew Member Supplementary Disability Benefit until he has completed one year of active employment as a Crew Member. A Pilot hired after July 1, 1989 shall not be eligible for a Pilot and Crew Member Supplementary Disability Benefit until he has completed one year of active, Permanent Full-Time Employment with the Employer as a Pilot. A Crew Member whose Disability Commencement Date is on or after May 31, 1999 shall be eligible for a Pilot and Crew Member Supplementary Disability Benefit after he has completed six (6) months of active Permanent Full-Time Employment with the Employer. A Pilot and Crew Member Supplementary Disability Benefit shall not be payable for a Disability incurred during the one year or six-month period described above. Once a Pilot or Crew Member is covered by the Plan for the benefit described above, such coverage shall continue until terminated as provided in Section 2.4.

Section 2.4. Termination of Pilot and Crew Member Supplementary Disability Coverage. Coverage of a Pilot or Crew Member by the Plan for a Pilot and Crew Member

Supplementary Disability Benefit will automatically terminate on the earliest of:

    (a)   the date his Employer discontinues the Plan;

    (b)   solely with respect to a Pilot or Crew Member, the date he ceases Permanent Full-Time Employment, including the date of his retirement or death;

    (c)   the date he attains the age of 60 years;

    (d)   the date he ceases to be a Pilot or Crew Member;

    (e)   the date he becomes a member of a Bargaining Unit unless such Bargaining Unit Crew Member's collective bargaining agreement specifically incorporates the Plan;

    (f)   the date he ceases to meet the definition of an Eligible Employee; or

    ~~(g)   the date he is suspended.~~

If, however, a Pilot or Crew Member whose coverage was terminated pursuant to Subsection (g) of this Section 2.4 is subsequently reinstated as a Pilot or Crew Member, respectively, his coverage for a Pilot and Crew Member Supplementary Disability Benefit shall be deemed never to have terminated and his absence from being actively at work shall be deemed to have been on account of his Disability, not his suspension.

AR 00416

ARTICLE 3
BENEFITS

Section 3.1.    Disability Benefit.    Upon receipt by the Claims Paying Administrator of proof that a Covered Employee has incurred a Disability, experienced a Seat Change or transferred to a non-Crew Member position, such Covered Employee shall be entitled to receive a Disability Benefit subject to the limitations and conditions set forth herein.

Section 3.2.    Amount of Benefit.

(a)    Subject to any applicable reduction for Other Income as provided in Section 3.6, a monthly Disability Benefit for a Covered Employee other than a Crew Member shall be payable to a Disabled Covered Employee equal to 60% of his Basic Monthly Compensation up to a maximum Disability Benefit of $7,500 per month.

(b)    Subject to any applicable reduction for Other Income as provided in Section 3.6, a monthly Disability Benefit for a Crew Member whose Disability Commencement Date is prior to May 31, 1999 shall be payable to such Disabled Crew Member equal to 60% of his Basic Monthly Compensation up to a maximum Disability Benefit of $7,500 per month.

(c)    Subject to any applicable reduction for Other Income as provided in Section 3.6, a monthly Disability Benefit for a Crew Member whose Disability Commencement Date is on or after May 31, 1999 shall

be payable to such Disabled Crew Member equal to
60% of his Basic Monthly Compensation up to a
maximum Disability Benefit of $8,000 per month
(such $8,000 maximum Disability Benefit being
subject to the limitations set forth in section
401(a)(17) of the Internal Revenue Code of 1986 (as
amended), as of the first day on which the Crew
Member begins receiving benefits under this Plan)
until such time as the Crew Member begins to
receive a Pilot and Crew Member Supplementary
Disability Benefit, pursuant to the provisions of
Section 3.4 herein.

Section 3.3.  Duration of Benefit.

(a)  Commencement of Benefit.    The Disability
Benefit shall commence to accrue on the day
following the conclusion of all benefits
payable to the Disabled Covered Employee
pursuant to the Federal Express Corporation
Short Term Disability Plan on account of the
same condition for which benefits are payable
hereunder and shall be payable monthly during
the continuation of Disability as provided
herein, except: (i) An officer of the Company
shall begin to accrue a Disability Benefit
under this Plan on the day following a period
of 27 weeks, or 28 weeks for an officer with 10
or more years of continuous service, beginning

on the day such officer incurred the Disability, without regard to such officer's ineligibility for benefits under the Federal Express Corporation Short Term Disability Plan (the "Short Term Disability Plan"); and (ii) A Crew Member whose Disability Commencement Date is on or after May 31, 1999, who shall be ineligible to participate in the Short Term Disability Plan, shall be eligible to participate in this Plan following his exhaustion of his disability sick bank account. A Crew Member who experiences a Seat Change or transferring to a non-Crew Member position shall no longer be eligible to receive twenty-four (24) months of Disability Benefits for an Occupational Disability payable at 60% of such Crew Member's Basic Monthly Compensation, but instead shall become immediately eligible to receive the Pilot and Crew Member Supplementary Disability Benefit described in Section 3.4.

(b) <u>Duration of Payment of Benefits for Chemical Dependency of Crew Members</u>. Solely with respect to a Crew Member whose Disability Commencement Date is on or after May 31, 1999, in the case of a Disability caused by the Covered Employee's Chemical Dependency, the benefit available under either the Short Term

Disability Plan or this Plan shall be limited to a one-time occurrence for a maximum of thirteen (13) consecutive weeks, except that if such Crew Member shall not have regained his airman's certificate within such thirteen-week period, an additional thirteen (13) consecutive weeks of benefits shall be available under the Plan if approved by the Claims Paying Administrator upon the recommendation of the Company's aeromedical consultant.

(c)  Cessation of Benefit.  The Disability Benefit shall cease to be paid to a Disabled Covered Employee when the earliest of the following events occurs with respect to such Employee:

(1)  he recovers from his Disability;

(2)  he ceases to be under the care and treatment of a Practitioner;

(3)  after 24 months of Disability Benefit eligibility (i) for an Occupational Disability or (ii) due to a Mental Impairment or nervous condition;

(4)  his attainment of the Maximum Benefit Age;

(5)  he fails to furnish or authorize the release of information, as requested

by, and within the time set by, the Claims Paying Administrator;

(6)   the termination of his Employment Status; however, if such termination is due to his failure to provide information requested by the Claims Paying Administrator concerning his Disability and, after such termination, he provides the requested information within the time provided in Section 5.3 hereof and the Administrator, or the committee referred to in Section 5.3(c), finds such information to be sufficient to support his claim for Disability Benefits, then payment of Disability Benefits shall be reinstated without regard to his Employment Status; in this case only, a former Employee shall continue to receive Disability Benefits from the Plan despite such former Employee's lack of a current employment relationship with the Employer;

(7)   he returns to work for the Employer in a permanent position;

(8)    the date his Employer discontinues the Plan;

(9)    he refuses a position offered pursuant to the Employer's Temporary Return to Work Policy or any similar personnel policy designed to return a Disabled Covered Employee to employment within the limits of his medical restrictions, except this event is not applicable to Crew Members or Pilots;

(10)   he refuses or fails to participate fully in an independent medical examination or examinations ordered by the Claims Paying Administrator;

(11)   he fails to follow treatment prescribed by a treating source which the Claims Paying Administrator determines can be expected to restore the Disabled Covered Employee to a condition of maximum medical improvement;

(12)   he is placed on furlough; or

(13)   he fails to do anything requested by the Claims Paying Administrator, including diligently seeking restoration of any required license

AR 00422

LTD.390096/ 4/17/01

23

to allow a Covered Employee to return to work.

(d)  Lump Sum Payment.    If a Disabled Covered Employee has Permanent Occupational Restrictions and Limitations which prevent him from returning to his regular occupation and if he is unable to find an available job with the Company within the time stated in the Company's applicable personnel policies and if the Company is unable to reasonably accommodate him, as required by applicable personnel policies and law, then such Covered Employee, upon the termination of his Employment Status, shall be paid a Lump Sum Present Value Payment (not to be offset by amounts earned from employment with someone other than the Employer) equal to the remaining benefits available under the Plan for an Occupational Disability, but excluding in any case the value of any Pilot and Crew Member Supplementary Disability Benefit. The foregoing shall not prevent such Covered Employee from voluntarily resigning his position prior to the expiration of the period available for placement in another position, in which case the Lump Sum Present Value Payment shall be made at that time. Such Lump Sum Present Value Payment

shall be adjusted, in an amount as determined by the Administrator in its sole discretion, up or down due to the payment or cessation of payment of any benefit that would have caused a different lump sum payment if such other benefit had been paid, or if it were not being paid, at the time that the Lump Sum Present Value Payment was calculated. The purpose of the preceding sentence is to ensure that the correct amount is paid from the Plan in a Lump Sum Present Value Payment without regard to the timing of receipt of other benefits available to a Disabled Covered Employee during the Plan's 24 month Occupational Disability period.

Section 3.4. Pilot and Crew Member Supplementary Disability Benefit. The purpose of the Pilot and Crew Member Supplementary Disability Benefit is to: (i) provide covered Pilots additional protection against loss of income for certain Occupational Disabilities for which a Disability Benefit is not otherwise payable under the Plan or to prevent certain reductions in his Disability Benefit as would otherwise occur by operation of Section 3.6, as more fully described in Subsection (c) therein; and (ii) provide covered Crew Members additional protection against loss of income due to a Seat Change, return to work in a non Crew Member position or certain Occupational Disabilities for which a Disability Benefit is not otherwise payable under the Plan or

LTD.390096/ 4/17/01

25

AR 00424

to prevent certain reductions in his Disability Benefit as would otherwise occur by operation of Section 3.6, as more fully described in Subsection (c) therein. Benefits payable pursuant to the provisions of this Section 3.4 are subject to the limitations set forth in section 401(a)(17) of the Internal Revenue Code of 1986 (as amended), as of the first day on which a Pilot or Crew Member receives benefits under this Plan).

(a) <u>Occupational Disability</u>. A monthly Pilot and Crew Member Supplementary Disability Benefit shall be payable to a Pilot or Crew Member with an Occupational Disability which exists when a Disability Benefit payable under the preceding Sections of this Article has ceased to be paid solely because of the expiration of the 24 months period described in Section 3.3(c)(3). With respect to a Crew Member whose Disability Commencement Date is prior to May 31, 1999, or a Pilot, such benefit shall be a continuation of the Disability Benefit determined in respect of such Pilot or Crew Member under Section 3.2 (subject to any reduction for Other Income as provided in Section 3.6) and shall be payable monthly until terminated as provided in Subsection (d) of this Section. With respect to a Crew Member whose Disability Commencement Date is on or after May 31, 1999, such benefit

shall be equal to 50% of such Crew Member's Basic Monthly Compensation in effect immediately prior to his Disability Commencement Date, subject to the provisions of Section 3.6 herein, until the cessation of such benefit as provided in subsection (d) of this Section 3.4.

(b) Seat Change. A monthly Pilot and Crew Member Supplementary Disability Benefit shall be payable to a Crew Member who has undergone a Seat Change. A Crew Member whose Disability Commencement Date is prior to May 31, 1999 shall receive a benefit equal to 60% of the difference between his hourly pay rate before and after the Seat Change times his monthly credit hours earned. With respect to a Crew Member whose Disability Commencement Date is on or after May 31, 1999, such benefit shall equal 50% of the difference between his hourly pay rate before and after the Seat Change times his monthly credit hours earned. Such benefit shall begin to accrue on the date the Seat Change begins and shall be payable monthly until terminated as provided in Subsection (d) of this Section. For purposes of determining the benefit payable under this Section 3.4(b), and solely with respect to a Crew Member who,

AR 00426

on May 31, 1999, was in a Seat Change position, such Crew Member's hourly rate before the Seat Change shall be multiplied by 116.105%.

(c)  Non Crew Member Position.  A monthly Pilot and Crew Member Supplementary Disability Benefit shall be payable to a Crew Member who has been assigned employment with the Employer other than as a Crew Member. A Crew Member whose Disability Commencement Date is prior to May 31, 1999 shall not receive a benefit under this Plan, but shall instead receive compensation from the Employer  equal to 60% of his Basic Monthly Compensation in effect immediately prior to his Disability, as provided in Section 3.2 and subject to the provisions of paragraph 1 of Subsection (c) of Section 3.6. With respect to a Crew Member whose Disability Commencement Date is on or after May 31, 1999, such benefit shall equal 50% of his Basic Monthly Compensation in effect immediately prior to his Disability Commencement Date, as provided in Section 3.4 and subject to the provisions of paragraph 2 of Subsection (c) of Section 3.6. Such benefit shall begin to accrue on the date the former Crew Member begins his assignment in a lower paying position and shall

be payable monthly until terminated as provided in Subsection (d) of this Section.

(d) <u>Cessation of Benefits.</u>   The Pilot and Crew Member Supplementary Disability Benefit shall cease to be paid to a Pilot or Crew Member when the earliest of the following events occurs with respect to such Pilot or Crew Member:

   (1)  he recovers from his Disability or is reinstated in the Crew Member position he occupied before a Seat Change;

   (2)  he ceases to be under the care and treatment of a Practitioner;

   (3)  his attainment of the Maximum Benefit Age;

   (4)  after 36 months of Pilot and Crew Member Supplementary Disability Benefits eligibility if the Disability is due to a Mental Impairment or nervous condition;

   (5)  he fails to furnish or authorize the release of information, as requested by, and within the time set by, the Claims Paying Administrator;

   (6)  the termination of his Employment Status; however, if such termination is due to his failure to provide

AR 00428

information requested by the Claims Paying Administrator concerning his Disability or Seat Change and, after such termination, he provides the requested information within the time provided in Section 5.3 hereof and the Administrator, or the committee referred to in Section 5.3(c), finds such information to be sufficient to support his claim for Pilot and Crew Member Supplementary Disability Benefits, then payment of such Disability Benefits shall be reinstated without regard to his Employment Status; in this case only, a former Pilot or Crew Member shall continue to receive Pilot and Crew Member Supplementary Disability Benefits from the Plan despite such former Pilot or Crew Member's lack of a current employment relationship with the Employer;

(7) the date his Employer discontinues the Plan or the Pilot and Crew Member Supplementary Disability Benefit;

(8) he refuses or fails to participate fully in an independent medical

AR 00429

examination or examinations ordered
by the Claims Paying Administrator;

(9) he fails to follow treatment
prescribed by a treating source which
the Claims Paying Administrator
determines can be expected to restore
the Disabled Covered Employee to a
condition of maximum medical
improvement;

(10) he is placed on furlough; or

(11) he fails to do anything requested by
the Claims Paying Administrator,
including diligently seeking
restoration of any required license
to allow a Covered Employee to return
to work.

Section 3.5. Recurring Disabilities. If a Covered
Employee recovers from a Disability for which benefits are
payable by this Plan, resumes Permanent Full-Time Employment
for the Employer and is actively at work, and within 180
calendar days thereafter again becomes Disabled from the same
or related cause or causes, then such Disability shall be
considered to be a continuation of the previous period of
Disability for all purposes of the Plan. However, if a
previously Disabled Covered Employee again becomes Disabled
from a different and unrelated cause or causes after he
resumes Permanent Full-Time Employment and is actively at

LTD.390096/ 4/17/01

31

AR 00430

work for at least one full day, or if the same or related Disability recurs more than 180 calendar days after he resumes Permanent Full-Time Employment for the Employer and he is actively back at work, then the subsequent Disability shall be considered to be a new period of Disability for purposes of this Plan.

Section 3.6. Reduction of Disability Benefit for Other Income.

(a) Other Disability Income Or Benefits. The amount determined under Section 3.2 or Section 3.3(d), if applicable, with respect to a Disabled Covered Employee or Section 3.4 with respect to a Pilot or Crew Member entitled to the benefit described therein shall be reduced by the sum of the following benefits to which such Employee is entitled to receive with respect to the same period and condition of Disability for which a Disability Benefit is payable under this Plan even though the Disabled Covered Employee, including a Pilot or Crew Member described above, shall have refused or failed to apply for such benefits within the time, or in the manner, required by such law, policy, plan or arrangement:

(1) any amount under any workers' compensation law, occupational disease law or any other federal or

AR 00431

state legislation of similar purpose, but only to the extent that such amount represents compensation for lost wages;

(2)    any amount under Federal Maritime Law;

(3)    any amount under any group plan of the Employer providing disability income benefits;

(4)    the amount of any disability income benefits under any compulsory benefit act or law;

(5)    any amounts from other sources as a result of injury while on active military reserve or National Guard duty;

(6)    any benefits under the provisions of any retirement plan, annuity plan or pension plan to which the Employer contributes (regardless of whether or not such Plan is maintained or sponsored by the Employer), but excluding (i) effective March 16, 1992, the Federal Express Corporation Profit Sharing Plan, provided, however, any offset due to benefits received from the Federal Express

Corporation Profit Sharing Plan prior to March 16, 1992 which remains in effect shall cease as of August 1, 1996, (ii) any benefits which are attributable to the Employee's own contributions to any plan, and (iii) any cost of living increases which occur after the initial payment of such benefits; any such benefits which are payable with respect to a period other than (or in addition to) the life of the Disabled Covered Employee shall be adjusted for purposes of this Section to an actuarially equivalent periodic amount payable only for the lifetime of the Disabled Covered Employee; or

(7)    any primary benefits payable to the Disabled Covered Employee because of age or disability under the Federal Social Security Act, but excluding any cost of living increases which occur after the initial payment of such benefits.

If the Claims Paying Administrator reasonably believes that benefits described in paragraphs (1) through (7) above are payable because of a

AR 00433

LTD.390096/ 4/17/01

34

Covered Employee's Disability, such Employee shall make application for such benefits and, if denied, the Claims Paying Administrator may require that such Employee appeal such denial to the full extent permitted by law. In the event that the Claims Paying Administrator reasonably believes that such benefits are payable, they may be treated as payable for purposes of this Section until the application is denied or the appeal process is exhausted; as determined by the Claims Paying Administrator.

(b) <u>Lump Sum Payments</u>. In the event that any income benefit described in Subsection (a) above is payable to a Covered Employee in a lump sum, other than a lump sum payment payable under the Federal Social Security Act, such payment shall be converted into monthly amounts which shall reduce the amount determined under Section 3.2. or 3.4. The amount of such reduction shall be determined as a level monthly amount which is the actuarial equivalent of such lump sum payment using interest equivalent to the rate then being used by the Company's Employees' Pension Plan for calculating lump sum payments and the shorter of the Covered Employee's life expectancy or

AR 00434

the longest period over which the Disability
Benefit is expected to be paid.

(c) <u>Earned Other Income</u>. (1) If a Disabled Covered
Employee, including a Crew Member whose
Disability Commencement is prior to May 31,
1999 or a Pilot, receives any compensation or
remuneration for personal services as an
employee, other than from the Employer (except
for a Crew Member who has experienced a Seat
Change or returned to work in a non-Crew Member
position), or as a self-employed individual the
amount determined under Section 3.2 or 3.4,
except as provided therein, shall be reduced by
the greater of:

(i) 50% of gross income earned as an
employee or 50% of adjusted gross
income earned as a self-employed
individual, as the case may be; or

(ii) the excess of his Other Income plus
the amount determined under Section
3.2 or 3.4 over his Basic Monthly
Compensation immediately prior to the
Disability, in order that the amount
of the Disability Benefit plus Other
Income will not exceed 100% of his
Basic          Monthly         Compensation
immediately prior to the Disability.

AR 00435

In the case of income received by a Covered Employee from any employment, trade or business (other than employment by the Employer) which has been carried on by him for at least one calendar year prior to the date on which he incurs a Disability, he will be deemed to have adjusted gross income from such employment, trade or business (for the purpose of applying the limitations set forth above) for any calendar year ending within his period of Disability only to the extent that the adjusted gross income derived from such employment, trade or business for such calendar year exceeds the adjusted gross income derived from such employment, trade or business for the last calendar year preceding the date on which he incurred the Disability.

(2) If a Crew Member whose Disability Commencement Date is on or after May 31, 1999 receives any compensation or remuneration for personal services as an employee, other than from the Employer (except for a Crew Member who has experienced a Seat Change or returned to

work in a non-Crew Member position), or as a self-employed individual, the amount determined under Section 3.2 or 3.4, except as provided therein, shall be reduced by 50% of the excess of (i) the sum of such Crew Member's Disability Benefit plus his Other Income, over (ii) his pre-Disability Income. For purposes of this Section, Pre-Disability Income shall mean the Crew Member's average earnings (from the Employer and from employment other than by the Employer) over the twelve-month period immediately preceding the Crew Member's Disability Commencement Date.

A former Crew Member receiving a Pilot and Crew Member Supplementary Disability Benefit under Subsections (b) or (c) of Section 3.4 shall not be subject to the reduction of that Disability Benefit as required by Paragraphs (1) or (2) of this Subsection (c) but only with respect to compensation or remuneration received for personal services as an Employee of the Employer.

AR 00437

A Disabled Covered Employee entitled to a Disability Benefit because of a job related injury (as defined under applicable workers' compensation law) who returns to work with the Employer in a Temporary Return to Work Position shall have his Disability Benefit reduced by the aggregate of the workers' compensation benefit, as provided in Subsection (a) above, and the wages payable from the Temporary Return to Work Position.

(d)  Social Security Income Payable Because of Age. The amount determined under Section 3.2 or Section 3.3(c), if applicable, with respect to a Disabled Covered Employee or Section 3.4 with respect to a Pilot or Crew Member entitled to the benefit described therein shall be reduced by the sum of any primary benefits payable to the Disabled Covered Employee because of age under the Federal Social Security Act, but excluding any cost of living increases which occur after the initial payment of such benefits.

Section 3.7.    Payroll Deductions.  Amounts required by law to be withheld for income taxes, or Social Security contributions will be deducted from Disability Benefit payments.    Normal Employee contributions to the Employer's

AR 00438

optional benefit plans such as optional life insurance and the like will be billed monthly by the Administrator for continuation of all optional coverage.    Normal Employee contributions to the Company's optional savings plans such as contributions to the Employee's individual credit union account, 401(k) and the like will be suspended until the Employee resumes permanent employment with the Employer.

Section 3.8.    Exclusions.    A benefit under this Plan shall not be payable for any Disability or Seat Change which results from:

    (a)   intentionally self-inflicted injuries, while sane or insane;

    (b)   participation in a serious criminal act which the Administrator determines, in its sole and exclusive discretion, would be a felony;

    (c)   service in the armed forces of any country while at war, declared or undeclared, or any act or hazard of war unless the Covered Employee is an expatriate or on temporary assignment in a war area on Employer business;

    (d)   sky-diving, hang-gliding, piloting a hot air balloon or piloting any ultralight or lighter-than-air aircraft;

    (e)   flying an aircraft for crop-dusting, spraying or seeding;

(f)   flying any prototype or test aircraft, unless in the normal course of employment with the Employer;

(g)   gender change, including, but not limited to, any operation, drug therapy or any other procedure related to a gender change;

(h)   cosmetic surgery unless such surgery is in connection with an accidental injury sustained while the individual is a Covered Employee and the treatment for such injury commences within 90 days after the accident;

(i)   reverse sterilization procedure;

(j)   a Chemical Dependency, except as described in Section 3.3(b) herein for a Crew Member whose Disability Commencement Date is on or after May 31, 1999;

(k)   a radial keratotomy procedure unless it is covered pursuant to the terms of the Federal Express Corporation Group Health Plan or such other similar plan adopted by an Employer; or

(l)   a medical fertility procedure as determined by the Claims Paying Administrator pursuant to its guidelines as they currently exist and may be changed from time to time and which are incorporated herein by reference.

Provided, however, that the exclusions in paragraphs (g), (h), (i), (k) and (l) will not apply to complications arising from these medical procedures.

Section 3.9.    General Limitation On All Benefits. Benefits payable under any provision of this Plan shall be payable exclusively out of the assets constituting the Trust Fund. If the Trust Fund lacks sufficient assets to provide the benefits payable by the Plan, neither the Employer nor any other person shall have any obligation to reimburse the Trust Fund or Covered Employees in the amount of such insufficiency or to pay any portion of such benefits.

AR 00441

ARTICLE 4
CONTRIBUTIONS

Section 4.1.    Company Contributions.    The Employer shall make contributions to the Trust Fund for each fiscal year in such amounts as are actuarially determined to be sufficient to fund on a level basis the benefits provided hereunder.

Section 4.2.    Contributions to Pilot and Crew Member Supplementary Disability Plan.    The Employer and each Crew Member eligible for a Pilot and Crew Member Supplementary Disability Benefit shall make equal contributions to the Trust Fund for each fiscal year in such amounts as are actuarially determined to be sufficient to fund on a level basis the Pilot and Crew Member Supplementary Disability Benefits provided hereunder.    Contributions made by eligible Crew Members who have elected to become covered for a Pilot and Crew Member Supplementary Disability Benefit shall be made until age 57 years and 190 days by means of a payroll deduction and forwarded to the Trust Fund as soon as reasonably possible, but in no case more than 90 days after receipt by the Administrator.

A Covered Employee receiving a Pilot and Crew Member Supplementary Disability Benefit shall continue to make such contributions only if he has experienced a Seat Change.    Such contributions shall be based upon his level of Basic Monthly Compensation in effect immediately before his Seat Change. However, effective July 1, 1989, Pilot and Crew Member

LTD.390096/ 4/17/01

43                                    AR 00442

Supplementary Disability Benefits shall be funded entirely by the Employer; Crew Member contributions shall not be required after that date.

Section 4.3.    Prohibition of Reversion or Inurement to Employer, Private Shareholders or Individuals.    Contributions made by the Employer to the Plan shall be made irrevocably, it being impossible for any part of the net earnings of the Trust Fund to inure to the benefit of any private shareholder or individual other than through the payment of Disability Benefits, or for any assets thereof to inure to the benefit of the Employer or to be used in any manner other than for the exclusive purpose of providing Disability Benefits to Covered Employees and for defraying reasonable expenses of administering the Plan; provided, however, that nothing herein shall prohibit the return to the Employer of all or part of a contribution which is made by the Employer under a mistake of fact, provided the return of such contribution is made within one year after the date of payment thereof.

AR 00443

LTD.390096/ 4/17/01

ARTICLE 5
SUBSTANTIATION OF DISABILITY; CLAIMS

Section 5.1. Proof of Disability. No Disability Benefit shall be paid under the Plan unless and until the Claims Paying Administrator has received an application therefor and information sufficient for the Claims Paying Administrator to determine pursuant to the terms of the Plan that a Disability exists. Such determination shall be made in a fair and consistent manner for all participants in the Plan. Such information may, as the Claims Paying Administrator shall determine, consist of a certification from the Covered Employee's attending Practitioner, in the form prescribed by the Claims Paying Administrator, information in the form of personal references, narrative reports, pathology reports, x-rays and any other medical records or other information as may be required by the Claims Paying Administrator. In addition, a Covered Employee may be required, as the Claims Paying Administrator shall determine, to submit continuing proof of Disability in the form of the information described above, as well as evidence that he continues to be under the care and treatment of a Practitioner during the entire period of Disability. If, in the opinion of the Claims Paying Administrator, the Practitioner selected by the Covered Employee cannot substantiate the Disability for which a claim is being made or benefits are being paid hereunder, such Employee may be required to submit himself to an examination

by a Practitioner selected by the Claims Paying Administrator.

If a Crew Member suffers a revocation of his airman's certificate and denial of restoration thereof by the Federal Aviation Administration, such Crew Member shall, as a condition to receiving any benefits under this Plan, appeal such denial to the highest appeal level of the Federal Aviation Administration or, if the Administrator so requests, such Crew Member shall (i) pursue a subsequent such appeal if his condition improves so as to increase the likelihood of success of such appeal, or (ii) make an appeal for the restoration of his airman's certificate to the National Transportation Safety Board if the Administrator reasonably believes that such appeal would succeed.

Section 5.2.    Notice of Claim.    Notice of claim for Disability Benefits under the Plan must be given to the Claims Paying Administrator by the Covered Employee or his representative in the manner determined by the Administrator within 60 days of the later of: (i) the date of the commencement of the Covered Employee's Disability or, in the case of a Crew Member, the date such Crew Member exhausts his disability sick bank account; (ii) the date on which a guardian is appointed by a court of competent jurisdiction for a Disabled Covered Employee who is legally incapable of giving the notice required by this paragraph; or (iii) the date on which, in the judgment of the Administrator, the

LTD.390096/ 4/17/01

46

AR 00445

Disabled Covered Employee regains his competency, if a guardian was not appointed.

With respect to a recurring Disability, notice of claim for Disability Benefits under the Plan must be given to the Claims Paying Administrator by the Covered Employee or his representative in the manner determined by the Administrator within 60 days of the later of: (i) the date of the commencement of the Covered Employee's recurring Disability or, in the case of a Crew Member, the date such Crew Member exhausts his disability sick bank account; (ii) the date on which a guardian is appointed by a court of competent jurisdiction for a Disabled Covered Employee who is legally incapable of giving the notice required by this paragraph; or (iii) the date on which, in the judgment of the Administrator, the Disabled Covered Employee regains his competency, if a guardian was not appointed.

For purposes of this Section 5.2, electronic notification of Covered Employees' eligibility for Temporary Return to Work Positions given to the Claims Paying Administrator through the Company's personnel information system called PRISM shall be considered timely notice required by this Section 5.2 if received by the Claims Paying Administrator within the 60-day period described above. No benefits shall be payable under the Federal Express Corporation Short Term Disability Plan nor under this Plan unless such notice is given as required in the immediately preceding sentences.

AR 00446

LTD.390096/ 4/17/01

47

Section 5.3.    Claims Procedure. If the Claims Paying Administrator determines that the benefits applied for under this Plan shall be denied, either in whole or in part, the following provisions shall govern:

(a)    Notice of Denial.    The    Claims    Paying Administrator shall, upon its denial of a claim for benefits and completion of its reconsideration process, provide the applicant with written notice of such denial setting forth:

(1)    the specific reason or reasons for the denial;

(2)    specific reference to pertinent Plan provisions upon which the denial is based;

(3)    a description of any additional material or information necessary for the claimant to perfect the claim; and

(4)    an explanation of the claimant's rights with respect to the claims review procedure as provided in Subsection (b).

(b)    Claims Review. Every claimant with respect to whom a claim is denied shall, upon receipt of the written notice of such denial as provided in Subsection (a), have the right to:

AR 00447

(1)  request the committee referred to in Subsection (c) to review the denial of benefits provided that such review is requested in a writing which must be sent to the Administrator within 60 days of the later of (i) the date the Claims Paying Administrator sends its written denial of such claim, (ii) the date a guardian is appointed for the Disabled Covered Employee, or (iii) the date the Disabled Covered Employee regains his competency if a guardian was not appointed;

(2)  review pertinent documents, provided such request is made in a writing submitted in the manner and within the time required by paragraph (1); and

(3)  submit issues and comments in writing in the manner and within the time reasonably set by the Administrator in order that such submissions may be prepared for and reviewed by the committee as provided in Subsection (c).

(c)  Decision on Review.   The Administrator shall appoint a committee for the purpose of

AR 00448

conducting reviews of denial of benefits and providing the claimant with written notice of the decision reached by such committee, setting forth the specific reasons for the decision and specific references to the provisions of the Plan upon which the decision is based. The committee shall meet at least quarterly and its decision on review shall be made no later than the date of its next meeting immediately following the Administrator's receipt of a written request for review, unless such request is filed within 30 days prior to such meeting. In such case, a decision shall be made no later than the date of the second meeting following the receipt of the written request for review. However, if special circumstances, as determined by the Administrator, require a further extension of time for processing, a decision shall be rendered by the committee not later than the third meeting following the Administrator's receipt of the written request for review.

The committee described in this Subsection (c) may appoint a subcommittee or subcommittees to review certain matters as described in the committee's minutes and such subcommittee or

AR 00449

subcommittees shall perform the review described in this Subsection (c) and shall have the authority described in Subsection (d) with respect to all matters it reviews even if such matter is later determined not to be within the delegated authority as set out in the committee's minutes.

(d)    Authority of Committee.    The committee, appointed pursuant to Subsection (c), shall be empowered to interpret the Plan's provisions in accordance with its terms with respect to all matters properly brought before it pursuant to this Section 5.3, including, but not limited to, matters relating to the eligibility of a claimant for benefits under the Plan. The determination of the committee shall be made in a fair and consistent manner in accordance with the Plan's terms and its decision shall be final, subject only to a determination by a court of competent jurisdiction that the committee's decision was arbitrary and capricious.

Section 5.4.    Overpayment of Claims.    If benefits are paid in excess of the amount to which a Covered Employee is entitled under this Plan, it shall be the obligation and responsibility of the such Employee to repay to the Plan the amount of the overpayment. If the overpayment is not repaid

within a reasonable time, the Administrator shall withhold from any future benefit payments and may withhold from any future compensation payments payable to such Employee in order to recover such overpayment. The Administrator shall have the right to bring a legal action against any Covered Employee who has been notified of an overpayment and who has failed to make appropriate repayment.

Section 5.5.    Subrogation or Reimbursement.    If benefits are paid on account of a Disability resulting from the intentional actions or from the negligence of a third party, the Plan shall have the right to recover, against any source which makes payments for any loss including, but not limited to, payments for medical expenses, lost wages, loss of consortium, wrongful death, punitive damages, general damages, etc. or to be reimbursed by the Covered Employee who receives such payments, 100% of the amount of benefits paid. If the 100% reimbursement provided above exceeds the amount recovered by the Covered Employee, less legal and attorney's fees incurred by the Covered Employee in obtaining such recovery (the Covered Employee's "Net Recovery"), the Covered Employee shall reimburse the Plan the entire amount of such Net Recovery. If the Covered Employee participates in the Employer's Temporary Return to Work Program ("TRW"), the Covered Employee shall reimburse the Plan (i) the amount of benefits paid, less (ii) the amount related to the TRW. The amount related to the TRW shall be calculated in a manner satisfactory to the Administrator in its sole discretion.

The Plan shall be subrogated to all of a Covered Employee's rights of recovery against any person or entity insofar as necessary to reimburse the Plan for 100% of all benefits paid by the Plan to, or on behalf of, the Covered Employee, together with reasonable costs, including attorney's fees and other legal expenses incurred by the Plan or the Employer, acting on behalf of the Plan, in enforcing its subrogation or reimbursement rights against the third party or Covered Employee. Any amounts recovered by the Plan, either by judgment or settlement, shall be paid to the Plan and applied first to reimburse the Plan and pay its costs and the Employer's costs. Amounts recovered in excess of the Plan's reimbursement and costs shall be paid to the Covered Employee, but such excess shall apply as a credit against any liability of the Plan for further payment of benefits to, or on behalf of, the Covered Employee with respect to the same Disability. The Covered Employee shall execute and deliver all necessary instruments and papers and do whatever else shall be necessary to enable the Plan to secure and pursue such rights. The Covered Employee and his representative shall do nothing to prejudice the Plan's rights of subrogation or reimbursement as provided herein. However, if such payment shall be received on account of a policy, contract or other arrangement, other than the Plan, for which the Covered Employee pays 100% of the cost of such coverage, the Plan shall not have such right of reimbursement.

However, this exclusion for participant-paid coverage shall not apply to coverage under a policy, contract or other arrangement in a "no-fault" jurisdiction.

Notwithstanding any other provision of this Plan, no benefits shall be payable by the Plan to the Covered Employee or his representative until the Covered Employee has executed a Reimbursement and Subrogation Agreement in a form satisfactory to the Administrator. If, after execution of the Agreement, the Covered Employee fails to honor the Agreement, the Plan Administrator shall (i) withhold any future payment of benefits from the Plan to the Covered Employee until the entire amount due is recovered, and (ii) take such other action it deems necessary to recover the full amount due the Plan.

In addition, if benefits are paid to, or on behalf of, a Covered Employee prior to such Covered Employee receiving a Reimbursement and Subrogation Agreement from the Administrator and the Covered Employee fails or refuses to execute the Agreement without alterations or executes the Agreement and subsequently fails to honor the Agreement, the Plan Administrator shall (i) withhold any future payment of benefits from the Plan to the Covered Employee, and (ii) take such other action it deems necessary to recover the full amount due the Plan.

Section 5.6.     <u>Disability Benefits of Deceased Covered Employee</u>.     Under no circumstances shall any payments under this Plan be made to the heirs, beneficiaries, administrator, executor or other personal representative of a deceased Covered Employee; provided, however, that any benefits accrued and payable to a Covered Employee as of a date prior to his death shall be paid to the executor, administrator or other personal representative of such deceased Employee's estate.

AR 00454

LTD.390096/ 4/17/01

55

ARTICLE 6
ADMINISTRATION OF PLAN

Section 6.1. Administrator. The Administrator is the named fiduciary of the Plan and shall have the absolute right and power to construe and interpret the provisions of the Plan and administer it for the best interest of Employees. However, the committee named by the Administrator in Section 5.3, or any subcommittee appointed by such committee, shall have the rights and power given to it pursuant to that Section 5.3. Except as limited by the preceding sentence and by Section 6.2 below, and subject to the requirements of the Code and ERISA, and, with respect to determinations regarding a Covered Employee who is a Crew Member, the terms of the Agreement (but only to the extent that the terms of the Agreement are not inconsistent with the requirements of the Code and ERISA), the Administrator's authority shall include, but shall not be limited to, the following powers:

a)    to construe any ambiguity and interpret any provision of the Plan or supply any omission or reconcile any inconsistencies in such manner as it deems proper;

(b)    to determine eligibility for coverage under the Plan in accordance with its terms; and

(c)    to decide all questions of eligibility for, and determine the amount, manner and time of

56

AR 00455

payment of, benefits under the Plan in accordance with its interpretation of its terms.

The determination of the Administrator shall be made in a fair and consistent manner in accordance with the Plan's terms and its decision shall be final, subject only: (i) with respect to any Covered Employee who is not a Crew Member, to a determination by a court of competent jurisdiction that the Administrator's decision was arbitrary and capricious, or (ii) with respect to any Covered Employee who is a Crew Member, to a determination that is consistent with the terms of the Agreement, but only to the extent that such determination is not inconsistent with the requirements of the Code, and ERISA. Nothing contained in this section shall prevent the Administrator from delegating non-fiduciary administrative duties to the Claims Paying Administrator or others as described in this Plan, the Plan's summary plan description or other document.

Section 6.2. Committee. A Committee shall be appointed by the board of directors of FedEx Corporation to perform the administrative duties hereunder other than the administration of claims which is the responsibility of the Administrator and Claims Paying Administrator to the extent such duties are delegated to it by the Administrator. The Committee is the named fiduciary of the Plan and shall adopt such rules and regulations that in its opinion are either necessary or desirable to implement and administer the Plan and to transact its business. In addition to this general

AR 00456

administrative power, the Committee shall have such other powers as may be necessary to perform its duties hereunder, including, without limiting the generality of the foregoing, the power to engage counsel and other agents at the expense of the Trust Fund, as it shall deem appropriate, subject to the requirements of the Code and ERISA, and, with respect to determinations regarding a Covered Employee who is a Crew Member, the terms of the Agreement (but only to the extent that the terms of the Agreement are not inconsistent with the requirements of the Code and ERISA). The Committee shall be empowered to supervise the investments of the Trust Fund and to establish investment guidelines including, without limitation, the power to appoint and remove investment advisers and to determine the portion of the Trust Fund to be set aside in short-term investments for the purpose of meeting the liquidity needs of the Plan. The Committee shall keep or cause to be kept records of its proceedings and decisions and shall keep such other records and data as may be necessary for the proper administration of its duties. All decisions of the Committee shall be made in a fair and consistent manner in accordance with the Plan's terms and its decision shall be final, subject only: (i) with respect to any Covered Employee who is not a Crew Member, to a determination by a court of competent jurisdiction that the Administrator's decision was arbitrary and capricious, or (ii) with respect to any Covered Employee who is a Crew Member, to a determination that is consistent with the terms

AR 00457

of the Agreement, but only to the extent that such determination is not inconsistent with the requirements of the Code and ERISA.

Section 6.3. <u>Trustee</u>. In accordance with the trust agreement, the Trustee shall have the duty and power to manage, control, invest and reinvest the assets of the Trust Fund. However, the Committee shall have the power to instruct the Trustee, in writing, to purchase such insurance policies or contracts and to make such other investments, or to appoint such investment advisors as to specific portfolios, in such amounts as the Committee shall determine.

Section 6.4. <u>Expenses of the Plan</u>. The expenses of administering the Plan and the compensation of all employees, agents, or counsel of the Committee shall be charged against the Plan and Trust Fund unless the Sponsoring Employers elect to pay such expenses.

Section 6.5. <u>Legal Incompetence</u>. If a Disabled Covered Employee is, in the judgment of the Administrator, legally incapable of personally receiving and giving a valid receipt for any payment due him hereunder, the Administrator may withhold such payments until a guardian or conservator of such person has been duly appointed by a court of competent jurisdiction, or it may, in its sole discretion, make such payment to such person's spouse, child, parent, brother or sister, or other person deemed by the Administrator to be a proper person to receive such payment. Any payment so made

AR 00458

shall be a complete discharge of any liability under the Plan
for such payment.

ARTICLE 7
AMENDMENT AND TERMINATION

Section 7.1.    Amendment of Plan.    The Sponsoring
Employers shall have the right at any time to modify, alter
or amend the Plan in whole or in part by an instrument in
writing duly executed by officers of each of the Sponsoring
Employers or as reflected in the minutes of FedEx
Corporation's board of directors or any committee thereof or
as reflected in the minutes of the Committee. No such
amendment shall permit the return or reversion to the
Sponsoring Employers of any part of the Trust Fund for the
benefit of anyone other than as provided in Article 3 hereof.
Such amendment shall be binding on all persons interested in
the Plan.

Section 7.2.    Termination of Plan.    The Sponsoring
Employers have established the Plan with the bona fide
intention that it will be continued indefinitely. However,
circumstances not now foreseen or beyond the control of the
Sponsoring Employers may make it inadvisable or impossible to
continue the Plan. Accordingly, each Employer reserves the
right to terminate the Plan at any time with respect to its
Employees, in whole or in part, and to thereupon discontinue
all coverages of, and payment to, its Employees and former
Employees hereunder.

Section 7.3    Distribution of Trust Fund Upon Termination.
Upon termination of the Plan as to any Employer, the Trustee,
in accordance with the trust agreement, shall continue to

invest and administer any assets remaining in the Trust Fund until all benefits accrued and unconditionally payable as of the date of termination have been paid or until all assets of the Trust Fund allocable to the terminating Employer have been exhausted if such latter event occurs earlier. At such time, the Trust Fund shall terminate as to such Employer and any remaining assets shall be applied toward the purchase of disability benefits for its Covered Employees as of the date of termination in accordance with the instructions of the Committee. Upon termination of the Plan, no part of the Trust Fund shall revert or inure to the benefit of the Employer or any shareholder or other individual other than through the payment of benefits under the terms of the Plan.

Section 7.4.    Merger and Dissolution.    The Plan shall terminate as to any Employer upon such Employer's legal dissolution, adjudication as a bankrupt, the making of a general assignment to or for the benefit of creditors, or merger or consolidation with any other corporation or business organization as a result of which such Employer is not the surviving organization, and in any such case, all trust assets shall be administered as provided in Section 7.3 hereof. However, the Plan may be continued in full force and effect by such other corporation or business organization which employs some or all of the affected Covered Employees, if such corporation or business organization shall agree with such Employer to assume its liabilities hereunder.

ARTICLE 8
MISCELLANEOUS

Section 8.1.  Benefits Not Assignable.  Benefits payable under this Plan shall not be assignable or transferable in any manner by any Covered Employee under the Plan nor shall they be subject to attachment, garnishment or any other legal process.

Section 8.2.  Rights of Covered Employees Narrowly Construed.  Neither the establishment of the Plan nor any modification thereof, nor the creation of any fund or account, nor the payment of any benefit hereunder shall be construed as giving to any Covered Employee or other person any legal or equitable rights against the Sponsoring Employer, any officer or Employee thereof or the Trustee or the Committee except as herein provided.  Under no circumstances shall the terms of employment of any Employee be modified or in any way affected hereby.  Nothing in this Plan shall be construed to give any Employee the right to be retained in the Sponsoring Employer's employment and such employment status may be terminated at any time in accordance with applicable personnel policies.  Each Covered Employee shall be deemed conclusively to have agreed to and accepted the terms and conditions of the Plan when he becomes a Covered Employee.

Section 8.3.  Number and Gender.  Wherever any words are used herein in the masculine gender, they shall be construed as though they were also used in the feminine and neuter

gender in all cases where they would so apply, and wherever any words are used herein in the singular or plural form, they shall be construed as though they were also used in the plural or singular form in all cases where they would so apply.

Section 8.4.    Necessary Parties.    In any action or proceeding involving the Trust Fund or any property constituting part or all thereof, or the administration thereof, the Sponsoring Employers, the Committee and the Trustee shall be the only necessary parties and no Employees or former Employees or any other person having or claiming to have an interest in the Trust Fund or under the Plan shall be entitled to any notice of process.

Section 8.5.    Agent for Service of Process.    The Company is hereby designated as agent for service of process for all purposes provided herein.

Section 8.6.    Governing Law.    Except to the extent preempted by federal law, or any other laws of the United States heretofore or hereafter enacted, as the same may be amended from time to time, the provisions of this Plan shall be administered, construed and enforced in accordance with the laws of the State of Tennessee.

Section 8.7.    Headings.    The headings of articles and sections herein are for reference only.    In the event of a conflict between a heading and the content of a section, the content of the section shall control.

AR 00463

Section 8.8.    Legal Effect.    The Plan, as amended and restated herein, shall take effect as of the date hereof and shall supersede the Plan as constituted prior to that date. However, an Employee actually placed in a position pursuant to the Company's Rehabilitated Employee Placement Program prior to March 16, 1992 shall not be subject to the Lump Sum Present Value Payment requirement of Section 3.3 and related provisions.

Section 8.9.    Execution.    This document may be executed in any number of counterparts and each fully executed counterpart shall be deemed an original.

AR 00464

IN WITNESS WHEREOF, the undersigned duly authorized officers of the Sponsoring Employers have caused this Plan to be adopted this 21st day of February , 2002, by affixing their signatures hereto.

FEDERAL EXPRESS CORPORATION

By: _____
Dennis Roche

Title: Vice President
Human Resources Administration

FEDEX CORPORATION

By: _____
William J. Cahill

Title: Vice President
Personnel

FEDEX LOGISTICS, INC.
(formerly, FDX Global Logistics, Inc.)

By: _____
Philip J. Azar

Title: Vice President
and General Counsel

FEDEX CORPORATE SERVICES, INC.

By: _____
William J. Cahill

Title: Staff Vice President
Personnel

LTD.323411/ 5/31/99

66

AR 00465

FEDEX FREIGHT CORPORATION
(formerly, FEDEX FREIGHT SYSTEM, INC.)

By: _____
Donald C. Brown

Title: Senior Vice President
and Chief Financial Officer

FEDEX TRADE NETWORKS, INC.

By: _____
Penelope Register

Title: Vice President
and General Counsel

TOWER GROUP INTERNATIONAL, INC.

By: _____
Penelope Register

Title: Vice President

WORLD TARIFF, LTD.

By: _____
Penelope Register

Title: Vice President

ATTEST:

_____
Joseph I. Schiffhauer
FedEx Corporation
Staff Vice President and
Assistant Secretary

AR 00466

LTD.390096/ 4/17/01